UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| MIKEL LAWSON, | : | Case No. 3:17-cv-119 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Plaintiff Mikel Lawson brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. He applied for benefits on August 19, 2014, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) George Michael Gaffaney concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Gaffaney's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since August 1, 2014. He was forty-four years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2]

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Gaffaney that in the last year he has been treated for cardiomyopathy, ischemic cardiomyopathy, neuropathy, and diabetes. (Doc. #6, *PageID* #79). He is unable to work because of "[a]ll of the elements; the back, and hips, and arthritis, shortness of breath, chest pain." *Id.*

Plaintiff's pain starts in his neck, goes down his back to his sciatic nerve, then down his legs to his feet. *Id.* at 82. He experiences it every day for four or five hours. *Id.* To alleviate his pain, he takes medication and has to frequently reposition himself. *Id.* at 83. He tried walking but, because of his COPD, he gets out of breath. *Id.* Most of Plaintiff's medications cause drowsiness. *Id.* at 81. As a result, he naps or rests about ten to twelve times a week for between thirty minutes and two hours. *Id.* at 86.

In his feet, Plaintiff experiences swelling, stinging, and burning; "it feels like they're being stabbed …." *Id.* at 82. In addition, his neuropathy causes his feet to go

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

numb four or five times a day.  *Id.* at 80.  He elevates his feet on and off all day to reduce swelling.  *Id.* at 85-86.

Plaintiff struggles with anxiety, depression, and sleeplessness.  *Id.* at 81.  He explained that they can affect his ability to work—for instance, he gets "scatterbrained" when he gets anxious.  *Id.* at 81.

Plaintiff estimated that he can walk half of a block, stand without pain for fifteen to twenty minutes, and sit for ten to fifteen minutes.  *Id.* at 83-84.  If he stands for a longer period, he fidgets and is "constantly rearranging and moving."  *Id.* at 84.  Since getting a pacemaker, his doctor restricted him to only lifting and/or carrying up to ten pounds.  *Id*.  He is able to reach with his right arm but cannot lift with his left arm because of where his pacemaker is located.  *Id.* at 85.  If Plaintiff bends or kneels, it hurts his lower back and cuts off circulation to his feet.  *Id.* at 84-85.

Plaintiff has difficulty with some household chores.  For example, he struggles with cooking and washing dishes because of his lower back problems.  *Id.* at 86-87.  In addition, he testified, "I have problems in the morning and sometimes I have to grab something to pull myself out of bed."  *Id.* at 87.  He is able to dress himself.  *Id*.

Plaintiff last worked—two jobs—in July 2014.  *Id.* at 78.  He stopped working at one job because he was no longer able to provide home healthcare to a patient who was "extremely heavy."  *Id*.  He stopped delivering pizzas because he was not making money and did not have a car.  *Id.* at 78-79.

### B. Medical Opinions

#### i. Aaron Hanshaw, M.D.

Dr. Hanshaw, Plaintiff's treating physician, completed a medical assessment in September 2015. *Id.* at 911-12. He opined Plaintiff could frequently lift and/or carry ten pounds; stand and walk for a total of two hours in an eight-hour day; and sit for a total of three hours—but he needs to be able to sit and stand as needed. *Id.* at 911. He will sometimes need to lie down at unexpected times for about two hours per day. *Id.* Dr. Hanshaw noted that the following medical findings support the above limitations: palpitations, cardiac arrhythmias, hip pain, knee pain, and peripheral neuropathy. *Id.*

Dr. Hanshaw opined that because of Plaintiff's hip and knee pain, he cannot twist, stoop, crouch, or climb ladders, and he can only climb stairs occasionally. *Id.* at 912. His peripheral neuropathy and carpal tunnel affect his ability to reach, push, pull, and feel. *Id.* Plaintiff's symptoms are severe enough to frequently interfere with his attention and concentration, leaving him unable perform simple work-related tasks. *Id.* As a result of his impairments and treatment, he would be absent from work more than four days per month. *Id.*

#### ii. James G. Laws, D.O.

Plaintiff's former cardiologist, Dr. Laws, completed two questionnaires. *Id.* at 472-74, 562-63. He diagnosed sick sinus syndrome, coronary artery disease, and diabetes mellitus. *Id.* at 562. Dr. Laws noted that Plaintiff experiences chest discomfort and dyspnea on exertion—i.e., walking half a block—and at rest. *Id.* at 473. His chest discomfort is relieved by resting for three to five minutes. *Id.* Further, there is evidence

of recurrent arrhythmias resulting in cardiac syncope or near syncope. *Id.* at 474. Dr. Laws noted that Plaintiff did not have any issues of compliance that interfered with his treatment, his response to prescribed therapy was "very stable," and he had "no limits cardiac wise." *Id.* at 563.

       iii.      Donald J. Kramer, Ph.D.

Dr. Kramer evaluated Plaintiff in July 2013. *Id.* at 525-30. Plaintiff reported to Dr. Kramer that "his main work limitations are physical in nature but says that he has always suffered from some anxiety." *Id.* at 525. His anxiety sometimes affects his stress tolerance and frustration tolerance. *Id.* at 526. It also causes him "some minor social problems at times …." *Id.* When Plaintiff is stressed, he has some problems with concentration and focus and can be irritable. *Id.* at 525-26. He also reported suffering from mild depression; he sometimes has difficulty getting in and out of bed, lacks energy, and is tearful at times. *Id.* at 527-28.

Plaintiff has no history of any psychological counseling. *Id.* at 527. His family-care physician prescribed Celexa but Plaintiff did not think it was helpful. *Id.* He was then prescribed Trazodone but had not yet started it. *Id.*

Dr. Kramer diagnosed anxiety disorder, not otherwise specified, and depressive disorder, not otherwise specified. *Id.* at 529. He opined Plaintiff's prognosis was "quite good." *Id.* Further, Plaintiff "displayed no significant emotional, social, or behavioral problems in the examination …." *Id.* at 530.

### iv. David Chiappone. Ph.D.

In December 2014, Dr. Chiappone evaluated Plaintiff. *Id.* at 677-84. He noted that Plaintiff "presented as being a bit depressed." *Id.* at 680. He seemed sad and made some depressive statements. *Id.* Plaintiff reported that his depression was severe, "his sleep is broken," he has decreased energy, he has lost interest in most activities, and he has crying spells on a daily basis. *Id.* He feels hopeless, helpless, and worthless. *Id.* Dr. Chiappone also observed that he was "a bit anxious" and "came across as being tense." *Id.* Plaintiff reported that since getting a pacemaker, he has had panic attacks every day. *Id.* During an attack, he has "rapid heartbeat, sweating, shaking, shortness of breath, chest pain, nausea, and dizziness." *Id.*

Dr. Chiappone opined that Plaintiff's concentration, attention, and memories were below average. *Id.* at 681. Further, he "may have some difficulty [1.] remembering information over time"; 2. "maintaining attention and concentration over time"; and 3. "dealing with co-workers and supervisors." *Id.* at 683. Dr. Chiappone diagnosed unspecified depressive disorder, unspecified anxiety disorder, and panic disorder. *Id.*

### v. Roseann Umana, Ph.D., Barbara Jones Smith, Ph.D., & Paul Tangeman, Ph.D.

Dr. Umana reviewed Plaintiff's records on July 23, 2013 in connection with Plaintiff's previous application for Social Security benefits. *Id.* at 99-111. She found that Plaintiff had two severe impairments—ischemic heart disease and diabetes mellitus—and two non-severe impairments—an affective disorder and an anxiety disorder. *Id.* at 105. Dr. Umana opined that Plaintiff has a mild restriction of activities of

6

daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.*

On October 27, 2014, Dr. Smith reviewed Plaintiff's records and found that he had three severe impairments: disorders of back-discogenic and degenerative; cardiac dysrhythmias; and diabetes mellitus. *Id.* at 117. He had one non-severe impairment—an anxiety disorder. *Id.* Dr. Smith found that Plaintiff had no restriction of activities of daily living but otherwise agreed with Dr. Umana. *Id.*

Dr. Tangeman reviewed Plaintiffs records on January 15, 2015. *Id.* at 137-52. In addition to the impairments found by Dr. Smith, Dr. Tangeman found Plaintiff had another severe impairment, an affective disorder. *Id.* at 144. Further, he has a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.* Dr. Tangeman opined that Plaintiff "is capable of understanding and remembering simple to moderately complex tasks but would need a low stress work environment without[] a fast pace or high demands." *Id.* at 148. Additionally, although he "is capable of interacting well with others, … [he] [w]ould do best in an environment that requires no more than small group interaction on an infrequent basis." *Id.* at 149.

   vi. *Elizabeth Das, M.D., & Gerald Klyop, M.D.*

On June 19, 2013, Dr. Das reviewed Plaintiff's records in connection with his previous application for benefits. *Id.* at 99-111. She opined that Plaintiff could lift

and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of six hours in an eight-hour day, and sit for six hours. *Id.* at 107. He could not climb ladders, ropes, or scaffolds and could occasionally climb ramps or stairs. *Id*. He could occasionally stoop, crouch, or crawl. *Id.* at 108. Dr. Das concluded that Plaintiff was not under a disability. *Id.* at 110.

Dr. Klyop reviewed Plaintiff's records on October 21, 2014. *Id.* at 113-23. He agreed with all of Dr. Das's opined exertional limitations and some of the postural limitations. *Id.* at 119-20. He found that Plaintiff could frequently climb ramps and stairs and occasionally kneel. *Id.* Dr. Klyop disagreed with Dr. Das regarding Plaintiff's environmental limitations. He opined Plaintiff must avoid concentrated exposure to work hazards. *Id.* at 120.

On January 5, 2015, Dr. Das reviewed Plaintiff's records again. *Id.* at 137-52. She agreed with most of Dr. Klyop's assessment. However, she found Plaintiff could occasionally climb ramps and stairs and had no kneeling limitations. *Id.* at 146. Further, he should avoid concentrated exposure to extreme cold and extreme heat. *Id.* at 147.

### III. **Standard of Review**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Gaffaney to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering the sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since July 1, 2014.
>
> Step 2: He has the severe impairments of degenerative disc disease, diabetes mellitus, status-post stent pacemaker placement and stent placement, and obesity.
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … except he can occasionally lift 10 pounds and frequently lift 5 pounds, can stand and walk for two hours out of an 8-hour day, and sit for six hours out of an 8-hour day. He can never climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, stoop, balance, kneel, crouch, and crawl, must avoid all exposure to hazards, and can tolerate occasional exposure to heat and cold."
>
> Step 4: He is capable of performing past relevant work as a staffing coordinator.

(Doc. #6, *PageID* #s 54-62). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 62.

## V. Discussion

Plaintiff contends that the ALJ failed to adequately weigh the medical opinion evidence and failed to reasonably and adequately account for his mental impairments throughout his non-disability decision. He also argues that the ALJ erred in finding that Plaintiff was not credible. The Commissioner maintains that the ALJ properly weighed the medical opinions, accounted for Plaintiff's mental impairments, and evaluated his credibility.

### A. Medical Opinions

ALJ Gaffaney assigned the opinion of Dr. Aaron Hanshaw, Plaintiff's treating physician, "some but not great weight." (Doc. #6, *PageID* #60). He did not, however, acknowledge that Dr. Hanshaw was Plaintiff's treating physician. In doing so, the ALJ failed to recognize the deference generally given to treating physicians by Social Security Regulations.

The Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

When a treating source medical opinion does not meet these criteria, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. R. 96-2P, 1996 WL 374188, at *4 (Soc. Sec. Admin. July 2, 1996). These factors include "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

In the present case, ALJ Gaffaney not only failed to recognize Dr. Hanshaw as a treating physician, he also failed to discuss the treating physician rule. Indeed, "The Commissioner acknowledges that that the ALJ did not conduct the two-step analysis that is required under the regulations." (Doc. #9, *PageID* #939). But this mistake, the

12

Commissioner insists, "does not necessarily constitute reversible error." *Id*. Instead, the Commissioner contends its merely harmless error because "the ALJ explained what weight he was giving the opinion" and "provided good reasons for not crediting Dr. Hanshaw's opinion." *Id*.

In the Sixth Circuit, "where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation." *Blakley*, 581 F.3d at 409 (citing *Wilson,* 378 F.3d at 547); *see Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) ("If an ALJ fails to give good reasons for declining to give a treating physician's opinion controlling weight, '[the Sixth Circuit] will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner.'") (quoting *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 551 (6th Cir. 2010)). For an example, an error may be harmless if

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) [] the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.

*Id*. Importantly, "the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision." *Blakley*, 581 F.3d at 409 (citation omitted).

In the present case, Dr. Hanshaw's opinion is not "so patently deficient …" nor was it adopted but the ALJ. The Commissioner correctly observes that some of the

13

ALJ's findings are consistent with Dr. Hanshaw's opinion. However, the ALJ does not provide any explanation for why he agreed with some opinions but not others.

Turning to the third exception, the Commissioner contends that the goal of § 1527(d)(2) has been met because the ALJ provided reasons for assigning "some but not great weight." The ALJ did provide some reasons for his vague conclusion. First, the ALJ found "Though [Plaintiff] has a pacemaker and underwent an additional stent placement surgery in 2015 …, following surgery [he] reported that his chest pain had 'improved significantly' and that had he not had 'any pressure tightness[] with exertion', and [w]as moving around more." (Doc. #6, *PageID* #60). Relatedly, the ALJ observed that "underlying treatment notes and the record evidence as a whole does not support finding that [Plaintiff] would miss more than four days of work per month, as his final cardiac surgery was successful." *Id*. Finally, the ALJ determined that "[t]here is no evidence to indicate that [Plaintiff] is able to only sit and stand for five minutes at a time, requires a sit/stand option at will, and can never stoop, crouch or twist." *Id*.

ALJ Gaffaney's reasons are not "'sufficiently specific to make clear,' Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5, that the ALJ recognized and evaluated the treating relationship[]" Dr. Hanshaw and Plaintiff. *Blakely*, 581 F.3d at 409. The ALJ's reasons focus primarily on Plaintiff's cardiac problems and ignore that his other impairments cause limitations. For instance, Dr. Hanshaw indicates Plaintiff has hip pain, knee pain, and peripheral neuropathy—all of which may limit his ability to crouch or stoop. (Doc. #6, *PageID* #911). Further, ALJ Gaffaney provides no rationale for his focus on Plaintiff's cardiac impairments.

14

Moreover, the ALJ's conclusion that there is "no evidence" to support Dr. Hanshaw's opinions is puzzling. The ALJ found Plaintiff's ability to sit, stand, stoop, crouch, and twist was limited—but not to the same extent opined by Dr. Hanshaw. This leads to the reasonable conclusion that there is—at the very least—some evidence to support Dr. Hanshaw's opinions.

Further, in contrast to his assessment of Dr. Hanshaw's opinion, ALJ Gaffaney did acknowledge that Dr. Laws—Plaintiff's *former* cardiologist—was a treating physician with a "longitudinal treating relationship" with Plaintiff. (Doc. #6, *PageID* #60). Dr. Laws opined Plaintiff did not have cardiac limitations. This is interesting because Dr. Laws last treated Plaintiff in June 2014—before Plaintiff's claimed disability onset date (August 1, 2014). Further, the record shows that Plaintiff established a treatment relationship with a new cardiologist after that date. Despite this, the ALJ assigned Dr. Laws' opinions "significant weight." *Id*. Although Plaintiff's relationship with Dr. Hanshaw and his practice was ongoing throughout all the relevant years, the ALJ made no mention of any treating relationship. The stark contrast between the two evaluations by ALJ Gaffaney leads to the conclusion that the ALJ overlooked, or ignored, Dr. Hanshaw's treating relationship with Plaintiff.

In sum, the ALJ's reasons are not sufficiently specific, do not reflect a complete review of the treatment records, and do not constitute "good reasons" for rejecting a treating physician's opinion. The Court, therefore "cannot engage in meaningful review of the ALJ's decision …" and the ALJ's improper weighing of Dr. Hanshaw's opinion is

not harmless error.³ *Blakley*, 581 F.3d at 409; *see Friend*, 375 F. App'x at 552 ("'We are reviewing the ... decision to see if it implicitly provides sufficient reasons for the rejection of [the treating physician's] opinion ... not merely whether it indicates that the ALJ did reject [that] opinion.'" (quoting *Hall v. Comm'r of Soc. Sec.,* 148 F. App'x 456, 464 (6th Cir. 2006)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.⁴

### B.  Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

³ Even if substantial evidence supports the ALJ's reasons for discounting Dr. Hanshaw's opinion, "substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error." *Blakley*, 581 F.3d at 409 (citing and parenthetically quoting *Wilson*, 378 F.3d at 546 ("[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2)[] would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'") (citation omitted)).
⁴ In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

16

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Mikel Lawson was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

July 5, 2018                                          *s/Sharon L. Ovington*
                                                                               Sharon L. Ovington
                                                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).